ROBINSON LAND & LUMBER CO. *v.* ROBERSON, Attorney
General.

[89 South. 160, N. 21864.]

1. CONSTITUTIONAL LAW.  *Taxation. Act authorizing Attorney General
   to appeal from assessments constitutional; act held not repealed;
   filing objections or joining issue before appeal unnecessary.*

   Chapter 120, Laws 1918, giving attorney general right to appeal
   from assessments, was not repealed by chapter 135, Laws 1918,
   as amended by chapter 323, Laws 1920; and the act is not vio-
   lative of due process and equal protection clauses of the Con-
   stitution; nor is it necessary for attorney general to file ob-
   jections to assessment, or join issue, before appeal will lie.

2. TAXATION.  *On appeal by attorney general from assessment as to
   valuation, controversy should be tried anew.*

   When an appeal from an assessment is prosecuted by the attorney
   general, and the question is the over or under valuation of the
   property under the assessment, the controversy should be tried
   anew, and the taxpayer may show that some of his property
   in the appeal is of less value than assessed, and that such
   overvaluation equals all undervaluation of other property assess-
   ed, thus precluding a raise in the whole assessment appealed
   from.

3. TAXATION.  *Notice to taxpayer as to increase of assessment con-
   strued.*

   Section 6, chapter, 323, Laws 1920, requiring notice by mail to the
   taxpayer whose assessment is increased, has reference to notice
   when assessment is increased upon the rolls by the board of
   supervisors, and not by judgment on appeal to the circuit
   court.

APPEAL from circuit court of Wayne county.

HON. J. D. FATHERREE, Judge.

Petition by Frank Roberson, Attorney General, for leave
to appeal from a personal property assessment against Rob-
inson Land & Lumber Company. From a judgment increas-
ing respondent's assessment, it appeals.  Reversed and
remanded.

*S. M. Johnston, Armbrecht, Hand & Meredith* and *Stevens & Heidelberg,* for the appellant.

The appellee herein bases his right to take this appeal from the assessment solely and alone by authority of the provisions of chapter 120 of the Laws of 1918. We respectfully submit that the attorney-general is without power or authority to prosecute any appeal at all, from any assessment which may have been made by the board of supervisors, for the reason that chapter 120 of the Laws of 1918, being the only law or statute in this state which purports to give to the state or the attorney-general the right to take any appeal at all has, by implication, been repealed by chapter 135 of the Laws of 1918, as amended by chapter 323 of the Laws of 1920, and for this reason the motion of appellant to dismiss the appeal should have been sustained.

We realize, of course, that neither chapter 135 of the Laws of 1918, nor chapter 323 of the Laws of 1920, in express terms refer to chapter 120 of the Laws of 1918, and we realize also that chapter 120 of the Laws of 1918, and chapter 135 of the Laws of 1918, were approved on the same date, but we call the court's attention to the fact that chapter 120 of the Laws of 1918, by the provisions thereof, went into effect immediately, while chapter 135 of the Laws of 1918, did not go into effect nor was it in force until the first day of October, 1920. The legislature must have had a reason in providing that the act last above referred to, should not take effect until the fall of 1920, and we humbly submit that the only possible reason the legislature could have had in mind was that chapter 120 of the Laws of 1918, was intended as a temporary measure, it being the purpose of the legislature to pass an act which should provide, only for the appeals during the then present fiscal year, and upon the expiration of that year, the whole scheme and system of taxation in Mississippi should undergo a change and, that thereafter, beginning on the first day of October, 1920, chapter 135 of the Laws of 1918, should furnish the sole and only system for the filing and approval of the as-

sessment roll and the appeals to be taken therefrom. We realize also in raising this point that it is a general rule of law that repeals of statutes by implication are not favored. However, it is the universal rule, as announced by numerous decisions not only of the supreme court of this state, but also by the supreme court of the United States that where a statute was evidently intended to revise the whole subject treated in a former statute and to be a substitute therefor, although there may be a plain *casus omissus,* the former cannot apply. See *Clay County* v. *Chickasaw County* 1. So. 753, wherein the above rule was announced in that case. Also it was held that the general rule is that when any other statute is revised, or where one statute is framed from another, some parts being omitted, the parts omitted are to be considered as annulled. In the case of *State* v. *Elks,* 69 Miss. 895, it was held that provisions of a statute omitted from one subsequently passed on the same subject to take its place and substitute it would be deemed to have been repealed.

It should be borne in mind also that in the application of this rule it is not necessary that the statute should be repugnant in all of its provisions, in order that the prior statute be repealed by the latter one.

In the case of *Meyers* v. *Marshall County,* 55 Miss. 344, the court held that although a statute be not repugnant in all of its provisions to a prior one, yet, if the latter statute was clearly intended to prescribe one rule that should cover a case provided for, it repeals the original act. See, also, the case of *Gibbons* v. *Brittenum,* 56 Miss. 232, and the following: *Swan* v. *Buck,* 40 Miss. 308; *State* v. *Elks,* 69 Miss 895; *Bartlett* v. *King,* 12 Miss. 537; cited with approval by this court in *M. & O. Railroad Company* v. *Wyner,* 49 Miss. 749; *Vicksburg* v. *Insurance Company,* 73 Miss. 70; *Archer* v. *Morse,* 101 Miss. 36.

In the case of *The District of Columbia* v. *Hutton,* 143 U. S. 18, 36 L. Ed. 60, it is held: "When there are two acts on the same subject, the rule is to give effect to both, if possible. But if the two are repugnant in any of their provis-

ions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first even where two acts are not in express terms repugnant. Yet, if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing it was intended as a substitute for the first act, it will operate as a repeal of the first act."

In the case of *Planters Bank* v. *State*, 6 S. & M. 628, it is held, in the construction of statutes, the intention of the legislature is a cardinal rule of construction. "Courts, not legislatures, determine whether statutes are repealed." 15 Rose's notes, U. S. Supreme Court reports, page 1026.

We submit further that even if chapter 120 of the Laws of 1918, under which this appeal is prosecuted, is not repealed, then that this act is in violation of the due process and equal protection clauses of the Constitution, in that it gives to the state and county twenty days after the adjournment of the meeting at which the decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected, in accordance with the instructions of the State Tax Commission or within twenty days after the adjournment of the meeting of the board of supervisors, at which the approval by the State Tax Commission is entered, in which to appeal, while it only gives to the taxpayer the right to appeal within five days after the adjournment of the meeting, at which an adverse decision is rendered. We submit that this is an unlawful discrimination in favor of the state and county, and against the taxpayer. It must be borne in mind in dealing with this question that the state is one litigant, and the taxpayer is the other litigant.

In the case of *Yazoo, etc., Railroad Company* v. *Wallace*, 90 Miss. 609, the supreme court held that a statute which prevented the trial court from setting aside the verdict of the jury which was excessive and did not give it the right to set aside a verdict which was inadequate, was unconstitutional and void, and in violation of the due process laws, that the due process laws required that any right given to one litigant must be given to another litigant.

This decision of the supreme court was reaffirmed in the case of *Mississippi Eastern Railroad Company* v. *Wymond Cooperage Company,* 93 Miss. 77. The same doctrine was also announced by the supreme court of this state in the case of *Chicago, etc., Company* v. *Morse Company,* 60 Miss. 641.

The only difference between the method of appeal and the right to appeal on behalf of the attorney-general, and the method and right on behalf of the taxpayer is that the attorney-general is required to give no bond, while the taxpayer is required to give a bond. Chapter 135 of the Laws of 1918, as well as section 4296 of the Code of 1906, which is brought forward as section 7, of chapter 135 of the Laws of 1918, and as section 7 of chapter 323 of the Laws of 1920, provides that a person who is dissatisfied with the assessment may at such July meeting present objections thereto in writing, which shall be filed by the clerk, and docketed and preserved with the roll. All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity, after its approval by the board of supervisors or by operation of law, except minors and persons *non compos mentis.*

By the provisions of these statutes, the taxpayer before he had the right of appeal at all, must first present his objections to the assessment in writing, and until he did this his right of appeal did not exist unless he appeared and filed written objections at the time when the board of supervisors was meeting for the purpose of equalizing the assessment or he was forever thereafter concluded by the assessment and precluded from objecting thereto even upon appeal, and before he could procure any appeal at all, he must first file his written objections to the assessment, as rendered by the tax assessor, and as approved by the board of supervisors. If he failed to do this, he had no right to appeal and was conclusively bound by the approval of the roll. See all the express provisions of chapter 120 of the Laws of 1918.

The attorney-general and the state of Mississippi, before any appeal can be taken at all, must comply with the provisions of law then existing, requiring objections to have been made and filed with the board of supervisors to the assessment as rendered by the tax assessor, and, in this case having failed to do this, we are without power to prosecute any appeal from the approval of the roll by the board of supervisors, and the state and county are concluded by the assessment, as approved by said board, and forever thereafter precluded from questioning its validity.

Section 4296 of the Code of 1906 provided: "In all cases after the return of the assessment rolls they shall remain on file and be subject to objections for at least two weeks after being filed, and until the next regular meeting of the board of supervisors, after the expiration of the two weeks, or until the day appointed in the case of an assessment by another than the assessor. A person who is dissatisfied with the assessment may, within such time, present his objections thereto in writing, which shall be filed by the clerk and docketed and preserved with the rolls. All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity, after its approval by the board of supervisors, or by operation of law, except minors and persons *non compos mentis.*

That part of the above statute quoted, providing for the filing of objections, and providing that all persons who fail to file objections are concluded by the assessment is brought forward and repassed as section 7 of chapter 135 of the Laws of 1918, and is again brought forward and repassed as section 7 of chapter 323 of the Laws of 1920.

We contend that the word "person" as used in these statutes is broader than 'taxpayer," and includes not only the taxpayer but includes the state and county as well. Section 1590 provides that whenever the word "person" is used in any statute in Mississippi that it shall apply to artificial as well as natural persons; it shall also apply to all public and private corporations as well as individuals. The wording of the above statute is very broad, and is very

clearly intended to cover the state and county as well as individuals. *South Carolina* v. *United States,* 50 L. Ed. 261; *The City of Louisville* v. *Commonwealth,* a Kentucky case, found in 85 American Decisions; *Dolman* v. *Morse,* 70 Miss. 267, 12 So. 23. And in, this case, the court cited with approval 18 American and English Encyclopedia of Laws, page 430, wherein it is stated that the word "person" may include the state or its subdivisions.

In the case of *Revenue Agent* v. *Clark,* 80 Miss. 151, the supreme court of this state decided that section 4296 applied alike to the state as well as to the taxpayer, and that when the word "person" was used in this statute it included the state as well as the taxpayer.

The court reached the above conclusion solely and alone because of the provisions of section 4296 of the Code of 1906, and thereby held that the word person as used in this section, would include both the state and the county as well as the taxpayer.

Counsel for appellee relied in the lower court on the case of *Louis Cohn and Brothers* v. *Lincoln County,* 81 So. 493, 119 Miss. 718, in support of their contention that it was not necessary to an appeal that objections must have been filed in writing before the board of supervisors. We submit, however, that the Cohn case is no authority for this contention. The facts in the Cohn case are altogether different from the facts in the case at bar. *North* v. *Culpepper,* 53 So. 419, 97 Miss. 730, which cites the cases of *Adams* v. *City of Clarksdale,* 48 So. 342; *Forsdick* v. *Board of Supervisors,* 25 So. 294, not officially reported.

It, therefore, seems clear to us that inasmuch as no objection were filed by any one, acting for the state or county to the assessment, as rendered by appellant to the tax assessor, and by him entered upon his roll, and filed with the board of supervisors, and, inasmuch as no reduction in this assessment was made by the board of supervisors, the state and county and the attorney-general are precluded by the assessment, and, for this reason, the motion to dismiss the appeal should have been sustained.

Here, we have a remarkable situation, the attorney-general, for the first time, contending on an appeal to the circuit court that the assessment of the Robinson Land & Lumber Company was for less than the real assessable value of its property. No issue was ever joined, no trial was ever had, and no decision was ever rendered by the court created by statute for the purpose of passing upon the question involved in this case. Not only is this true, but no adverse decision has ever been rendered against the attorney-general, or against the state or county.

In fact, chapter 120 of the Laws of 1918, under which the attorney-general claims his right to take this appeal, provides that an appeal may be taken, provided the state, county or municipality be aggrieved by the decision of the board of supervisors. There could have been no decision, unless there was an issue, and the clear intent of this statute is that the decision from which the appeal could be taken is an adverse decision.

In the case at bar, there never was any decision by the board of supervisors. There could not have been, because there was no issue raised.

We come now to the consideration of another point involved in the case, which, we think is bound to cause a reversal of this case, regardless of what might be the judgment of the court as to the right of the appellant to have had the appeal dismissed. The statute which provides for an appeal to be taken says that when the case is tried in the circuit court, it shall be tried *de novo.*

The agreed statement of facts herein shows that all of the property of the Robinson Land and Lumber Company, except lumber on hand, and machinery, on hand, was assessed at its proper value; that lumber on hand was assessed at two thousand dollars less than its assessable value, and that machinery on hand was assessed at two thousand dollars more than its assessable value, so, in the trial *de novo,* in the circuit court when, the issue to be tried was, what was the reasonable, fair and assessable value of the proper-

ty of the Robinson Land & Lumber Company there should have been but one decision, that the aggregate value of this property was no more than the amount for which it is assessed; on the trial of this issue, while the court must have rendered judgment, if we are mistaken in our right to have the appeal dismissed, for an increase on the item of lumber, it must also have rendered judgment for a decrease on the item of machinery, and the one offset the other. Under the authorities, a trial *de novo* is a trial anew, a trial as if there had never been a trial before. The same rules covering the trial of an appeal from a judgment of the justice court must apply to an appeal from the tax assessment, because by both statutes, it is provided that the case must be tried *de novo.*

In the case of *Callahan* v. *Newell,* 61 Miss. 437, it is held that on appeal from the justice court, the case is tried anew as if never tried before, and any defense may be set up for the first time, in the circuit court. The above case was reaffirmed in the case of *Illinois Central Railroad Company* v. *Andrews,* 61 Miss. 474.

Words and Phrases, page 7108, citing 55 Tex. 273, provides that a trial *de novo* means a trial of the entire case anew hearing evidence, whether additional or not, and not a trial on appeal. The same authority also holds that a *de novo* trial in the appellate court is a trial had as if no action had been instituted in the court below, and, in support of this, cites 32 Atlantic, 225.

The legislature of Mississippi has recognized this rule, because it has provided that on an appeal by the defendant from a judgment rendered against the defendant in the justice court, if the plaintiff recovers as much or more in the circuit court than he recovered in the justice court he is also entitled to recover ten per cent damages. Section 86, Code of 1906. This is not a legislative act authorizing a recovery of more by the plaintiff where the defendant procured the appeal, but is merely a legislative recognition of the fact that on such an appeal the plaintiff would not be bound by the amount of his recovery in the justice court,

but would be authorized to recover more in the circuit court and providing for a penalty to be imposed against the defendant in such case. *Harrison County* v. *Robertson,* 83 So. 617.

It seems to us too clear for argument that the very word "anew" means that there must be a trial just as if there had never been a trial before, and any issue, which could have been submitted and which could have been passed on in the lower court, can be submitted and should be passed on in the appellate court; the issue to be determined on the trial of the case is what is the reasonable value of the property liable for taxation, and, if it appear on the trial of the case that some of the property of the taxpayer has been assessed at a greater value than its reasonable and assessable value, the taxpayer is entitled to have the assessment reduced to the real value of his property and this without regard to whether the appeal might have been taken by him, or whether taken by the attorney-general, and so we submit aside from every other question involved in this case that it was error for the court below to render any judgment at all in increasing the assessment of appellant, because of the fact that its property was already assessed at its true and assessable value.

The judgment of the court in this case is erroneous and should be reversed for another reason. This judgment increases the assessment of the Robinson Land and Lumber Company two thousand dollars, and yet no notice was ever sent by mail to appellant, by the clerk of the board of supervisors, or by any one else, as required by section 6 of chapter 323 of the Law of 1920. The latter part of which section reads as follows: "And where an individual assessment has been increased as much as five hundred dollars, notice shall be sent by mail to the person whose assessment is increased by the clerk of the board of supervisors."

It is the clear intention of the legislature, as will be seen from a reading of this section, that in no event can the assessment of a taxpayer be raised to a sum in excess of five

hundred dollars, until notice thereof be given and the tax-payer given the opportunity to object to the increase, and submit his evidence to the board of supervisors, in order that a decision may be had thereon, and, yet, if an appeal can be prosecuted, as the attorney-general is attempting to prosecute it herein, this plain, positive requirement of statute that before an increase can be made in a sum in excess of five hundred dollars, notice shall be given the taxpayer, is circumvented and done away with, and the attorney-general is permitted, as he was permitted in this case, to increase the assessment of a taxpayer to a sum far in excess of five hundred dollars and no notice whatever given or attempted to be given to the taxpayer, to appear before the proper authority, the board of supervisors, and present his objections. If he is right in his contention and permitted to do this, then he is given greater power than the board of supervisors, and is permitted by this unjust procedure to do what the board of supervisors could not do itself; that is, increase the assessment of a taxpayer more than five hundred dollars without giving the notice required by statute.

*Frank Roberson* and *Wells, Stevens & Jones,* for appellee.

We desire first to answer the argument of counsel for appellant that chapter 120, Laws of 1918, has been repealed by chapter 135, Laws of 1918, as amended by chapter 323, Laws of 1920. There can be no merit whatsoever in this argument. Chapter 120, Laws of 1920, is amendatory of our old section 81 of the Code and designed simply to give the right of appeal to the attorney-general as well as to the taxpayer. This statute was approved March 27, 1918. Chapter 135, Laws of 1918, as disclosed by the title had in its purpose a plan to authorize the state tax commission to furnish the proper form of real and personal assessment roll and to define the duties of tax assessor and boards of supervisors in the making, filing, approving and

35

correcting of the roll. This section does not directly pertain to the right of appeal, but does embrace section 7, authorizing any person who is dissatisfied with the assessment to appear at the revenue session of the board and present objections in writing and providing all persons who fail to file objections shall be concluded by the assessment. This statute was approved also on March 27, 1918. In other words both chapter 120 and chapter 135, Laws of 1918, were passed by the same legislature and approved on the same date. They both pertain in a general way to the assessment of property for taxation but relate to different phases of the subject. There is no conflict in the two chapters or in any material provisions thereof. . Before there could be a repeal by implication there must be a necessary conflict in the statutory provisions. No such conflict arises on the face of these statutes. Both can stand together and both in fact have heretofore stood together. We say this because chapter 135 in most of its material provisions simply carry forward the same law as appears in our code. Counsel frankly concedes that repeals by implication are not favored. There is no occasion to discuss this, or the *Clay Co.* v. *Chicasaw Co.*, 1 So. 735, *State* v. *Elks*, 69 Miss. 895, or any other authorities cited by counsel announcing the well-known principles of law that the last statute must govern and that any conflicts between two ' statutes must be resolved in favor of the last expression of the legislative will. The authorities cited by counsel simply reiterate "horn book" law but have no application to the statutes now under review. It could never be said that chapter 135, Laws of 1918, is a substitute for chapter 120, Laws of 1918, to say that the legislature intended to pass two conflicting laws on the same day would be to convict the legislature of stupidity. But regardless of any generalities, the two laws are not in conflict and both can stand and freely operate side by side.

The second main thought advanced by counsel is the point that there is an unlawful discrimination in favor of the state and county and against the taxpayer when the

state and county are given twenty days in which to appeal and the taxpayer is only given five days. The entire premise upon which this argument is founded gives way when we remember that the right of appeal is statutory and in the absence of statute does not exist. The proposition that the right of appeal is purely statutory has been put at rest in this state by the recent case of *Town of Tutwiler* v. *Gibson,* 117 Miss. 879, 78 So. 926, as a case decided by the full court. The present chief justice speaking for the court said: "The right of appeal exists only by virtue of the statutes which confer it, can be exercised only in accordance therewith and within the time allowed thereby."

This case simply announces the well-known rule of law, that the right to appeal whether from justice court or board of supervisors or the circuit court is purely statutory, must be based upon the express provisions of the statute and must be taken within the time specified.

No constitutional question is here involved. There is no provision either of the state or Federal constitution that prohibits a reasonable discrimination as between the state and one of its citizens when it comes to granting the right of appeal. If the contentions of counsel were true then the state could not provide that no statute of limitations should run against it without trespassing upon the constitutional rights of the citizen. Surely the state is not powerless to protect its own interest to provide how and in what fashion it may be sued, and how and within what time it may appeal from any judgment in any court within its own borders. In our latest statute, chapter 323, Laws of 1920, the taxpayer is given two chances or rights of appeal and also the right of arbitration. The first right of appeal is granted under section 7, a section which was brought forward, from chapter 135, Laws of 1918, which likewise brought the same provision forward from the code, this right conferred by section 7 authorizing any person to appear at the first general revenue session of the board and file objections in writing and granting the right

of appeal from any order of the board overruling such ob-
jections relate to fundamental defects in getting up the
assessment roll such as fraud, a total failure to comply
with the law, gross inequalities as between certain classes
of property which would prejudice the individual making
or filing the objection. These objections are presented, at
the first session at which the assessor and the board of
supervisors undertake to look over the roll and equalize
generally over the county. Learned counsel for appel-
lants argue to this court that if any person fails to file
objections at this session of the board, he is concluded, and
does not possess any right of appeal whatsoever. Coun-
sel does say that if an appeal is desired to be taken from
the assessment roll as returned by the assessor, then the
objection in writing must be filed before the board of
supervisors and cites in support of this argument the case
of *Cohn & Bro.* v. *Lincoln Co.,* 119 Miss. 718, 81 So. 492.
But unfortunately for learned counsel the Cohn case is
conclusive against counsel's contention. This case affirma-
tively holds that the right of appeal must be found in old
section 81 of the Code and that anyone aggrieved at any
decision with reference to taxation or the assessment for
taxation can appeal regardless of whether he has filed
written objections or not. This case was likewise decided
by the court *in banc* and the decision announced by the
present Chief Justice. The contention was squarely made
that, "No appeal will lie from a decision of the board of
supervisors by which a valuation made by the assessor of
property for taxation was increased unless the person ag-
grieved by the decision objected in some way thereto."

This was the first of the two main contentions pressed
upon the court. In answer to this contention the court
said: "The first of these contentions is without merit for
the reason that section 81, Code of 1906 (section 61, Hem-
ingway's Code), under which the appeal to the court be-
low was taken provides that any person aggrieved by the
decision of the board of supervisors may appeal, etc., and
not that any person aggrieved by a decision of the board

of supervisors and who has objected thereto may appeal."
*Investment Co.* v. *Suddoth,* 70 Miss. 421, 422, 12 So. 246.

Any doubt seems now to be removed by the very recent
case of *M. & O. Railroad Co.* v. *Board of Supervisors of
Wayne County,* 87 So. 139, advance sheets No. 2, March 26,
expressly holding that the taxpayer can now wait until the
final touch is given to the roll in pursuance to the order
of the state tax commission and when the board of super-
visors enter the final certificate of the state tax commis-
sion approving the roll, this is the final judgment rendered
against the taxpayer and he has five days after this final
order in which to appeal. The writer of this brief is unable
to reconcile the opinion of Judge Sam C. Cook, in this last
case with the express provision of section 10, chapter 323,
Laws of 1920, giving the taxpayer the option to appeal.

This statute gives affirmatively the option to the tax-
payer to appeal at three different occasions as the neces-
sity of the case suggests. Our court in the M. & O. Rail-
road case recently decided, seems to ignore this section
of the law and to confine the right of the taxpayer to five
days after the adjournment of the board finally approving
the roll under directions of the state tax commission. While
the right of the taxpayer to appeal is not directly involved
in the case at bar we respectfully submit that this recent
decision of the court is in the face of the statute and limits
unnecessarily the taxpayer's right to appeal.    The tax-
payer is not required to wait until the roll is finally ap-
proved but may appeal from the action of the board at the
August meeting when his rights have been invaded and his
protest has been overruled.

Mr. Judson in his splendid work on taxation, paragraph
509, says: "The law-making power determines the ques-
tions of discretion or policy in ordering, assessing and
collecting taxes, and determining the necessary rules and
regulations. The mere fact that a special procedure is
provided for the taxation of a certain class of property
different from that provided for another class or from the
general procedure in taxation will not make the act pro-

viding such special procedure invalid. These are matters of detail within the legislative discretion." Paragraph. 510.

On the other hand there is no denial of the equal protection of the laws in the fact that the law gives the assessors in cases of corporations two chances to arrive at the correct valuation of real estate, when they have but one in the case of individuals. The Indian Railroad case referred to by Mr. Judson is found in 154 U. S. 426. We also cite in this connection *McLeod* v. *Recevieur*, 71 Fed. 455.

In paragraph 346, Mr. Judson says that a rehearing or appeal in tax matters is not required but if the taxpayer is given an opportunity for hearing at any stage before the tax becomes final, whether before a *quasi*-judicial board or before any other tribunal provided by the state it is sufficient and that it is no objection if the procedure is summary. And in the Indian Railroad case referred to, the supreme court said: "Rehearings, new trials are not essential in due process of law, either in judicial or administrative proceedings. One hearing if ample before judgment satisfies the demand of the Constitution in this respect."

So we respectfully submit that the taxpayer does not possess as a matter of constitutional right any right of appeal whatsoever if he has had his day in court before the board of supervisors. There being no constitutional right of appeal, it is clearly within the power of the legislature to make reasonable distinction or discrimination in conferring the right of appeal upon the taxpayer and the attorney-general acting for the state.

The question of due process and equal protection of the law granted by the Federal Constitution so far as this section has any bearing upon taxation has frequently been before the supreme court of the United States, see, cases of *Winona and St. Peter Land Co.* v. *Minnesota* (U. S.), 40 Law. Ed. 247; *Weyerhausser* v. *Minnesota*, 44 L. Ed. 583. In paragraph 308 of Volume 26, R. C. L. The footnotes here cite the Indiana Tax case above referred to 154 U. S.

421, 38 L. Ed. 1031, and also *Nathon* v. *Spokane Co.* (Wash.), 76 Pac. 521, 102 A. S. R. 888, 65 L. R. A. 336. In the annotation on case note L. R. A. 1916E, page 21, the editor treating of the right of appeal, among other things says: "Where he has had a hearing it is not necessary that he be given a further right of appeal." Alabama case of *State* v. *Bley,* 50 So. 263; *Clay Co.* v. *Brown Lumber Co.,* 90 Ark. 413, 119 S. W. 251.

After the motion to dismiss the appeal had been presented by appellant and overruled by the learned circuit judge, appellant thereupon attempted to present to the court a cross-action or cross-demand setting forth an alleged overvaluation in machinery and asking the court to reduce the item of machinery and to offset an alleged overvaluation of machinery against an undervaluation of lumber. Without conceding appellant's right to any relief whatsoever in this regard, we did agree that if, under the law, appellant could prosecute any such cross-action that then for the purpose of this trial we could agree that the machinery was overvalued in the sum of two thousand dollars. We made this agreement with the purpose of having this law point decided and cleared up by the court and we are confident in our position that the circuit judge ruled correctly in holding the taxpayer on this appeal could make no such claim. This appeal was not prosecuted by the taxpayer and the five days allowed appellant within which to make appeal had passed, and having passed, the roll became conclusive against the taxpayer. Furthermore the taxpayer in this case gave in this machinery at eighty thousand dollars and having made a return to the assessor, valuing machinery at eighty thousand dollars this return is conclusive and binding on the taxpayer and appellant is estopped from now disputing its own return. So it is that we have two main reasons or contentions on this alleged right of offset or cross-action attempted to be presented by the taxpayer in this case. Our first contention is that this is primarily and essentially an appeal by the attorney-general to raise valuations and

not to lower valuations. The attorney-general is aggrieved at the undervaluation and prosecutes an appeal with the view of having this valuation raised. It is true that the case is tried *de novo* in the sense that the record is not binding and either party has an opportunity to present witnesses and revalue the property. It may be that the attorney-general has a right to bring in or add to the list certain items of personal property which do not affirmatively appear under either subtitle on the asessment roll. But be that as it may, no such question arises in this case and the sole issue presented in this case is whether the attorney-general had a right to increase the valuation. That was the issue raised by the appeal. Now the attorney-general did not ask for any increase on machinery when it came to the merits of the case on appeal and produced no witness in reference to this item. He limited his contention to increasing the item of lumber and for the purpose of this trial counsel for the taxpayer agreed that the item of lumber was undervalued in the sum of two thousand dollars. Unless the attorney-general were to introduce testimony in reference to the valuation of machinery a jury in this case could not consider the valuation of machinery and so the valuation fixed by the assessment roll would remain final and conclusive. The attorney-general was satisfied with the valuation of machinery, although this item is embraced in the general appeal prosecuted. The taxpayer has waived his right to have appeal and lost his day in which to prosecute an appeal; and so it is that by all of the previous adjudications of this court the roll becomes binding upon him. It is finally a judgment forever binding upon the taxpayer. If the attorney-general sees fit to prosecute an appeal he would have a right to dismiss the appeal and whether he did so or not, the taxpayer has no right to file any cross-action or seek any affirmative relief by way of cross-action. No cross-action is provided for by the statute and the statute must govern. It is all statutory.

Another and a sufficient reason why the taxpayer may not prosecute this cross-action is the fact that it gave in its return or list voluntarily assessing machinery at eighty thousand dollars and this list is conclusive and binding. The authorities on this point are clear and conclusive against appellant's contention.    In paragraph 361, Mr. Judson says: "Estoppel of taxpayer by his return for assessment.    The rule is well established that the taxpayer is bound and estopped by his own statement as to the nature, title and value of his property made in the list which he returns for taxation, although of course the public is not bound, and no one else could be prejudiced by the list of property which he does not own; nor does a taxpayer make such list a covenant for a title."

In accordance with this rule the supreme court of Illinois in the case of *In Re Bank of Marion et al,* 39 N. E. 118, ruled as shown by the syllabus:   "In absence of any evidence of fraud, accident or mistake, a property-owner is bound by a schedule of his taxable property given by him to the assessor.    *People* v. *Atkinson,* 103 Ill. 45, followed." *Dull* v. *Lefevre et al.,* 222 Fed. 471; *State* v. *Cooper* (Wis.), 18 N. W. 438.

We might add in passing that in this case just quoted from the Wisconsin court quoted to approve the language of the chief justice in the former case of *State* v. *Dunham,* 26 Wis. 393, slightly touching up those who resist a demand for taxes in the following language:   "How many persons would resort to any expedient to prevent all of their taxable property from being assessed or if assessed at all from being assessed at its true value.    They will deceive assessors and intimidate even the boards of equalization if possible."

In 27 American and English Encyclopedia of Law, page 671, it is stated the taxpayer in listing his property for taxation is generally bound by the statements he makes as to its extent and value and estopped from disputing assessments made in conformity therewith, etc.    In the footnotes are listed cases in support of this text from California, Col-

orado, Connecticut, Florida, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, New York, Tennessee, Texas and Vermont.

We desire to emphasize the point that in prosecuting appeals from assessments there is no inherent right of appeal and the statutes must be strictly followed. Before the state was given any right to appeal, the taxpayer possessed the statutory right of appeal and could have his assessment reduced. We know of no case authorizing the state to increase the assessment where the state was not given the right of appeal and the taxpayer has himself appealed. On the contrary it is stated in 27 American and English Encyclopedia of Law, 720: "It has been held that courts in determining appeals can only consider the correctness of the assessment in regard to the complaint made and have no authority to increase the assessment."

Our court in *Madison Co.* v. *Frasier,* 78 Miss. 880, held, that no appeal will lie until the assessment is finally approved and in *Vicksburg* v. *Adams,* 74 Miss. 179, and *Morris Ice Co.* v. *Adams,* 75 Miss. 410, held that a personal judgment against the taxpayer on appeal is not authorized.

If the court should hold that the taxpayer can present a cross-action and have any item of personal property reduced in these appeals by the attorney-general, then the object of the statute will be to some extent at least defeated. The taxpayer will be justified in holding back to see if the state or county will not appeal from his gross undervaluation and get the benefits of an appeal for himself without assuming the obligations. If the taxpayer appeals he is required to give bond which stands good for the taxes. No such bond was given by appellant in this case and without such bond the taxpayer is not in court on this appeal except to defend the appeal of the state and county.

The state is certainly sovereign when it comes to exacting just tributes from the citizen and in requiring the taxpayer to comply with the law. This is illustrated in a case that arose in Ohio and went to the supreme court of the

United States. *Sturgis* v. *Carter,* 114 U. S. —, 29 L. Ed. 240.

Counsel argue that it was incumbent upon the attorney-general to appear before the board of supervisors and file written objections and not having done so, there is no issue to be tried on the appeal. There are at least two good and sufficient answers to this argument.

The taxpayer possesses the right of appeal without filing written objections. This appeal is not attempted to be prosecuted by the attorney-general to upset the entire roll or to raise any fundamental objection to the work of the assessor from any issue of fraud going to the whole roll. The appeal in the present case is merely for the purpose of having specific property of a designated corporation revalued or increased. The taxpayer possesses this right of appeal for the purpose of having his property reduced, notwithstanding the fact that he failed to file any written objection. This is made plain by the *Cohn case, supra.*

This duty is primary. The state has an interest in these appeals. The statute in granting the right to appeal imposes no condition of the kind argued by counsel and there can be no merit in the contention that the attorney-general must file objections or even appear before the boards of supervisors. He is expressly granted twenty days after the final approval of the roll in which to look over the whole situation and prosecute any appropriate appeal.

Counsel have much to say about the case of *Revenue Agent* v. *Clark,* 80 Miss. 134, holding that the final approval of the roll is binding both upon the taxpayer and the public. We do not at all dispute this general proposition. The Clark case relied upon by counsel says: "When no appeal is taken the statute declares the roll to be conclusive. Of course, if no appeal had been taken in this case the roll would be conclusive both upon the taxpayer and the public, including the state. But here an appeal has been taken and that clearly within the time allowed by law.

There is another minor point raised by counsel to the effect that the judgment rendered in this cause increased the assessment of appellant two thousand dollars when no notice was sent by mail as required by section 6, chapter 323, Laws of 1920. This section manifestly has reference to the duty of the board at the August meeting, when it equalizes the assessment and increases or diminishes the valuation of any property. If at the August meeting an individual assessment has been increased as much as five hundred dollars notice shall be sent by mail to the person whose assessment is increased. The language is: "Notice shall be sent by mail to the person whose assessment is increased by the clerk of the board of supervisors," making plain that this notice is confined to the action of the board at the August meeting. Appellant's lumber was increased and appellant was given notice but the only trouble is that the board did not increase lumber in a sufficient amount. The very action of the board in increasing appellant's lumber is affirmative proof that appellant failed to place a proper valuation upon its lumber. Appellant did not appeal from this increase. It now seems to complain that the action of the attorney-general in performing his official duty, in further raising lumber two thousand dollars. Of course, it is an unpleasant thing to pay taxes sometimes and naturally human nature rebels and complains when it comes to rendering "unto Caesar the things that are Caesar's."

Appellant had a summons to oppose and contest this appeal and had its day in court and was accorded not only a full hearing but indeed a special hearing because Judge FATHEREE assigned a special day to hear this cause in vacation of the court and thereby gave counsel the fullest opportunity to press upon the court every contention which is here renewed on this appeal.

We respectfully leave the question to the court.

HOLDEN, J., delivered the opinion of the court.

This suit involves the right of the attorney-general to appeal from assessments approved by the board of supervisors, and the respective rights of the state and the taxpayer at the trial on appeal.

The appellant herein, the Robinson Land & Lumber Company, is a corporation engaged in the sawmill business in Wayne county, Miss. During the year 1920 it duly rendered its lists of assessable personal property to the tax assessor of said county, and the board of supervisors of said county, at the regular time fixed by law, to-wit, at the August meeting, 1920, met for the purpose of hearing objections and equalizing the assessment of the various taxpayers of said county, after having duly published notice, as required by law. After having passed on all of the assessments at said meeting, the personal assessment rolls were approved by the board of supervisors, as required by law, and thereupon were sent to the State Tax Commission, for their examination and approval or disapproval. The State Tax Commission duly passed on the personal assessment roll of said county, and entered its order approving said roll without any change whatever. After the entering of said order by the State Tax Commission, the rolls were returned to the board of supervisors of Wayne county, and, on the seventh day of October, 1920, were finally approved by said board, and the certificate entered at the November meeting. On the 22d day of November, 1920, there was filed with the clerk of the board of supervisors of Wayne county, by the honorable Frank Roberson, attorney-general of the state of Mississippi a petition asking for an appeal from the assessment of the Robinson Land & Lumber Company. No objections to the assessment of the Robinson Land & Lumber Company were ever filed or made, either orally or in writing, by the attorney-general, or any one acting for the state of Mississippi, or for Wayne county, with or before the board of supervisors, either at the August, 1920, meeting of said board or at any other meet-

ing thereof, and the first notice that any one had that any officer of the state was dissatisfied with said personal assessment was the filing of said petition on the 22d day of November, 1920.

The personal roll, as finally approved by the board of supervisors, shows that the personal assessment of the Robinson Land & Lumber Company was two hundred thousand dollars. The agreed statement of facts filed herein shows that the item appearing on said personal roll of the Robinson Land & Lumber Company, under the head of lumber, shingles, fertilizer, or other manufactured products, eighty-four thousand, nine hundred and thirty dollars, was two thousand dollars less than the real value of said articles; that the real value of said articles was, on the 1st day of February, 1920, the sum of eighty-six thousand, nine hundred and thirty dollars, and said agreed statement of facts further shows that the item appearing on said assessment under the head of machinery, eighty thousand dollars, was two thousand dollars more than the real value of said machinery; on the 1st day of February, 1920, the said machinery was in fact worth only seventy-eight thousand dollars; so that, while one item of assessable property was underassessed two thousand dollars, another item was overassessed an equal amount, and the assessable value of all of the personal property of the Robinson Land & Lumber Company, as of February 1, 1920, did not exceed the aggregate amount of said assessment, to-wit, two hundred thousand dollars.

The appellant herein, in the lower court, filed an original and amended motion to dismiss. On the hearing of this motion, the lower court overruled the same, and thereupon the appellant filed its objection to any increase in its personal assessment. The appellee filed a demurrer to the objection above referred to, which demurrer was by the trial court sustained, and thereupon the lower court entered a judgment increasing the assessment of the Robinson Land & Lumber Company two thousand dollars; hence this appeal.

It is contended by the appellant that the attorney-general is without power to prosecute any appeal from an assessment, for the reason that chapter 120, Laws 1918, which gives the attorney-general the right to appeal from an assessment approved by the board, has, by implication, been repealed by chapter 135, Laws 1918, as amended by chapter 323, Laws 1920. We are unable to agree with the contention of appellant that the chapter granting authority to the attorney-general to appeal from the decision of the board on any assessment is repealed by implication, because the two chapters, 120 and 135, Laws 1918, were enacted at the same time, and are not repugnant to each other. It clearly appears that the legislature intended that both statutes should stand and work in harmony with each other.

Appellant further contends that chapter 120, Laws 1918, granting the right of appeal to the attorney-general, is in violation of the due process and equal protection clauses of the Constitution, in that it gives the state and county twenty days in which to appeal, while it only gives the taxpayer five days within which to appeal. This position is untenable, for the reason that there is no discrimination in the act as between persons or corporations, and, as the right of appeal is statutory, and could be granted or refused by the state, the state being the sovereign power dealing with a procedure with reference to taxation and revenue, it has the inherent power of discriminating in its own favor as to the time in which to appeal, so long as it affords equal protection of the law as between all persons.

Next, the appellant argues that the appeal of the attorney-general should have been dismissed, for the reason that he did not first present and file with the board his objections to the assessment as rendered by the tax assessor and approved by the board, as required by the said chapter 120, Laws 1918. We must disagree with the appellant on this point, because the statute granting the attorney-general the right of appeal does not require him to file objections before the board; the provisions with reference to

filing objections applies only to persons, taxpayers, and not to the state.

It is further contended by the appellant that the appeal of the attorney-general must fail, because there should have been an issue raised and a trial had in the court of original jurisdiction—that is, the court of the board of supervisors; and that, since no issue was raised and tried before the board, no appeal can be maintained and a trial had in the circuit court. We cannot concur with this view, because there was an issue on the assessment before the board, and a decision by its approval of the assessment, and from this judgment the appeal was properly prosecuted by the state through its attorney-general.

The next point urged by the appellant is that the appeal by the attorney-general was taken by direction of the State Tax Commission, and must fail because the Tax Commission has no authority to direct any such appeal. There is no merit in this point, for the reason that it makes no difference whether the Tax Commission has authority to direct the appeal or whether it had any authority whatever in the premises, the attorney-general had the authority to appeal, and he exercised it.

The appellant next contends that the circuit court erred in increasing the assessment two thousand dollars on the lumber of appellant, and in not permitting appellant to offset this increase by showing that its assessment of its machinery was at an amount which exceeded its true value by two thousand dollars; that, as the attorney-general had appealed from the whole personal assessment of appellant, and as the appeal was to be tried anew, appellant should have been permitted to show that, while the lumber was undervalued two thousand dollars, the machinery was overvalued two thousand dollars, but that the total true value of all of the personal property was the same as that assessed and approved by the board of supervisors, and could not be increased. On this proposition, we think the appellant is right, and that the court erred in refusing to permit the appellant to reopen the assessment on his

machinery and show that it was overvalued to the extent of two thousand dollars by the assessment approved by the board of supervisors.

The appeal by the attorney-general was from the entire assessment of the personal property of the appellant, and, by an agreed statement of facts in this record, it appears that the machinery was overvalued to the extent of two thousand dollars, and that the lumber was undervalued to that extent. The statute which authorizes the procedure plainly provides that the appeal is to be tried anew in the circuit court, which undoubtedly means that the issue as to the valuation of all of the personal property of the appellant is to be determined *de novo,* and a new judgment rendered assessing the property at such value as shown by the evidence on the trial.

It would be manifestly unfair to the taxpayer, who has been brought into the circuit court on appeal by the attorney-general for a new trial as to the valuation of his personal property, to be denied the right to show that, while some of his personal property is undervalued, other personal property is overvalued, and that the aggregate valuation of all of the property assessed does not exceed the total assessment approved by the board. And that is exactly this case. The total valuation of the personal property of appellant, after increasing the lumber assessment two thousand dollars and reducing the machinery assessment two thousand dollars, was two hundred thousand dollars, this being the same amount of the assessment appealed from by the attorney-general; therefore, the court should have permitted the appellant to present his defense showing the overvaluation in the assessment of the machinery.

Counsel for the attorney-general, in opposition to the above view, urges that the taxpayer is estopped from denying his assessment, and that he must appeal before he can ask for a reduction in the assessed valuation of his property. We are familiar with the rule of estoppel of the taxpayer to dispute the assessment as listed by him, but

36

the rule is not applicable in this case for several reasons, two of which are, first, that the record does not show here that the taxpayer listed the machinery at eighty thousand dollars, and, second, the doctrine of estoppel in such cases has reference to the right of the taxpayer to contest or dispute an assessment listed by him in resisting the collection of some right incident thereto; but in the case before us we are dealing with a statute which provides that upon appeal the question of assessment as to values is to be tried anew, and there decided upon proof showing whether the assessment is under or over the true value.

And, last, appellant contends that the increase allowed by the circuit court is error, because no notice was sent by mail to appellant by the clerk of the board of supervisors showing the increase of the assessment as required by section 6, chapter 323, Laws 1920. There is scant room for discussion of this point, because the requirement of notice by mail to a taxpayer whose assessment has been increased has reference to an increased assessment made by the board of supervisors, and not to an increased assessment made by the circuit court on the appeal and trial in that tribunal.

The judgment of the lower court is reversed, and case remanded.

*Reversed and remanded.*